**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**FRANK DOOLEY, JR.,**

      **Plaintiff,**

v.                                                   **Case 2:15-cv-02425-cgc**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security,**

      **Defendant.**

**ORDER AFFIRMING DECISION OF COMMISSIONER**

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 1381-1385. By consent of the parties, this case has been referred to the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Plaintiff protectively filed for DIB and SSI on April 4, 2012. (R. at 27, 149-54). He alleges a disability onset date of September 18, 2011. (R. at 149). His applications were denied initially and upon reconsideration. (R. at 90-99, 103-07). Upon Plaintiff's request, the Administrative Law Judge ("ALJ") held a hearing on his claim on November 14, 2013 and ruled that he was not disabled on January 7, 2014. (R. at 27-38). The Appeals Council denied review. (R. at 1-6). Thus, the ALJ's decision became the Commissioner's final decision. Plaintiff filed this action, requesting reversal

of the Commissioner's decision. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on October 3, 1962 and was forty-eight years old as of the alleged onset date. (R. at 149). He has performed past relevant work as a fork-lift operator, gate guard, and delivery driver. (R. at 37-38).

The ALJ determined in his final decision as follows: (1) Plaintiff meets the insured status requirements of the Act through September 30, 2015; (2) Plaintiff has not engaged in substantial

gainful activity since September 18, 2011; (3) Plaintiff has the following severe combination of impairments: hypertension; diabetes; obesity; disorders of the back and neck; osteoarthritis; obstructive sleep apnea; affective disorder; and, anxiety disorder; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except he must never climb ladders, ropes or scaffolds; (6) Plaintiff is capable of performing past relevant work as a fork-lift operator, gate guard, and delivery driver; and, (7) Plaintiff has not been under a disability as defined in the Act from September 18, 2011 through the date of the ALJ's decision. (R. at 24-38).

The Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Secretary of Health & Human Servs*, 923 F.2d 1168, 1174 (6th Cir.1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors,

if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.[1]

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520. Here, the sequential analysis proceeded to the fourth step.

On appeal to this Court, Plaintiff has presented two issues for review. First, Plaintiff asserts that the ALJ should have given more weight to the opinion of the consulting examiner, Dr. Linda Yates ("Dr. Yates"). Second, Plaintiff argues that the ALJ's findings as to his credibility are not supported by the record.

With respect to the weight accorded to Dr. Yates's opinion, the ALJ's assessment of medical source opinions must follow 20 C.F.R. § 404.1527(c) and § 416.927(c), which contain six factors. First, the ALJ must examine the relationship between the patient and medical professional, as more weight is accorded to an examining source. 20 C.F.R. §§ 404.1527(c)(1) & 416.927(c)(1). Second, the ALJ must consider whether the medical professional actually treated the patient, as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture

---

[1] Before proceeding to step four of the sequential evaluation process, the ALJ must determine the claimant's RFC pursuant to 20 C.F.R. 404.1520(e) and 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe pursuant to 20 C.F.R 404.1520(e), 404.1545, 416.920(e), and 416.945.

of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). If a treating source's opinion on the nature and severity of the impairment(s) is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). If a treating source's opinion is not given controlling weight, the ALJ must consider the length of the treatment relationship and the frequency of examination along with the nature and extent of the treatment relationship to determine if his or her opinion should be given more weight than a nontreating source. 20 C.F.R. §§ 404.1527(c)(2), (c)(2)(I)-(ii), 416.927(c)(2) & 416.927(c)(2)(I)-(ii). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2) & 416.927(c)(2).

Third, the ALJ must consider the amount of relevant evidence the medical source provides to support the opinion, particularly medical signs and laboratory findings, to determine the amount of weight to be given to the opinion. 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3). As to nontreating sources, the weight accorded to their opinions will "depend on the degree to which they provide supporting explanations for their opinions." *Id*. The ALJ must also "evaluate the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." *Id*.

Fourth, the ALJ must consider the consistency of the opinion, as the more consistent an opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. §§ 404.1527(c)(4)

5

& 416.927(c)(4). Fifth, the ALJ generally gives more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to an opinion of a source who is not a specialist. 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5). Sixth, the ALJ will consider any factors the claimant or others bring to his or her attention, or of which he or she is aware, which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(6) & 416.927(c)(6).

With respect to Dr. Yates, the ALJ concluded as follows:

> On July 9, 2012, the claimant underwent a consultative examination performed by Linda Yates, M.D. The claimant exhibited a full active range of motion of his cervical spine, both shoulders, and both elbows. He was able to get up and walk across the room without any difficulty. He had no limp, and he was able to tandem gait, heel gait, toe gait, and stand alone on either foot. The claimant had full active range of motion of all finger joints, as well as a 5/5 bilateral handgrip and good manipulative abilities to both hands (Exhibit 12F).
>
> He exhibited full strength in all of his extremities. Dr. Yates made the following diagnostic impressions[:] lumbar pain, radicular into buttocks and to right lateral thigh to knee, obesity, sleep apnea, uses CPAP, diabetes mellitus, on oral medication, complaints of arthralgia in right shoulder, right hip, and knees, status post MVA with teardrop fracture of C2 and T3 and posterior ligamentous injury and thoracic epidural hematoma in 2008, hypertension on medication, and hyperlipidemia; on medication (Exhibit 12F).
>
> According to Dr. Yates, the claimant has no restriction sitting 4 to 6 hours in an 8-eight hour day for an-hour duration. He could stand and be ambulatory 2 to 3 hours in an 8-hour day for 20-minute durations. He could occasionally lift and carry 20 pounds in an 8-hour day. She indicated that the claimant could not climb, or perform excessive bending, kneeling, or squatting, secondary to his knees and back. Limited weight is accorded to Dr. Yates's opinion, as the claimant's physical examination was generally benign and her findings do not support the claimant only being able to walk for 2 to 3 hours in an 8-hour day for 20-minute durations, occasionally lift and carry 20 pounds in an 8-hour day, as well as not perform "excessive" bending, kneeling, or squatting. Notably, her use of the term "excessive" is vague and not objectively measurable (Exhibit 12F).

(R. at 35-36).

With respect to the six factors in 20 C.F.R. § 404.1527(c) and § 416.927(c), the ALJ noted

6

that Dr. Yates examined Plaintiff but did not treat Plaintiff. *See* 20 C.F.R. § 404.1527(c)(1)-(2) & § 416.927(c)(1)-(2). Plaintiff argues that, as such, the ALJ should have accorded her opinion more weight that those of the state-agency medical consultants, Dr. Chaudhuri and Dr. Thrush. *See id.* While it is true that an examining source is to be accorded more weight than a non-examining source with respect to the factor of assessing the examining relationship, *see id.*, she is not accorded the controlling weight that may be given to a treating source. *Id*. Further, the ALJ's consideration of the remaining five factors allows him to further assess the appropriate weight to assign to any source's opinion; thus, the ALJ's determination as to the examining relationship in (c)(1) is not determinative as to the ultimate weight according any source's opinion. As such, simply stating that Dr. Yates is an examining physician and Dr. Chaudhuri and Dr. Thrush are not does not establish the weights to be given to their respective opinions, as this would ignore the remaining five considerations. Finally, the ALJ is not required to "give good reasons" for the weight accorded to a non-treating source. *Id.* § 404.1527(c)(2) & 416.927(c)(2). Thus, while the ALJ does not discuss the relationship between Dr. Yates and Plaintiff any further than stating that she performed a "consultative examination," such a discussion is explicitly not required, and the ALJ did not err in not providing further analysis.

As to the substance of Dr. Yates's opinion, the ALJ fully summarized the support that Dr. Yates provided for her opinion, including medical signs—namely, his range of motion, his "bilateral handgrip," his "manipulative abilities" in both hands, and his extremity strength—as well as her "diagnostic impressions." (R. at 35); 20 C.F.R. § 404.1527(c)(3) & § 416.927(c)(3). The ALJ also considered the consistency of Dr. Yates's opinion and concluded that it was internally inconsistent. (R. at 36) ("[T]he claimant's physical examination was generally benign and her findings do not

7

support the [restrictions she assigned]."). The ALJ did not explicitly discuss Dr. Yates's specialty or any other factors that support or contradict Dr. Yates's opinion C.F.R. §§ 404.1527(c)(5)-(6) & 416.927(c)(5)-(6); however, as stated above, the ALJ is not required to explicitly address each factor in his decision for a non-treating source. C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

Nonetheless, Plaintiff raises the following arguments: (1) the ALJ's characterization of Dr. Yates's findings as "largely benign" is inconsistent with her observations of radiating lumbar pain in his right leg and significant obesity; (2) Dr. Yates's finding that Plaintiff had a normal gait only shows that he had the "ability to ambulate a few steps in a doctor's office," which "does not translate into the ability to stand and walk for six hours in an eight-hour work day"; (3) other treatment notes show that Plaintiff has sciatic pain, chronic spondylosis,[2] and positive straight-leg tests on both legs, which supports the restrictions on standing and walking that Dr. Yates imposed; (4) Plaintiff's back impairment warranted a restriction to light lifting; and, (5) Dr. Yates's failure to define what constitutes "excessive" bending, kneeling, and squatting, while imprecise, contradicts the ALJ's finding that he could do so "frequently." Despite these arguments, the ALJ clearly followed the six-factor test as required by 20 C.F.R. § 404.1527(c) and § 416.927(c) in determining the appropriate weight to be assigned to Dr. Yates's opinion. Thus, this Court cannot conclude that he erred in his analysis and determination.

Plaintiff further argues that, if the ALJ were "confused" about any of Dr. Yates's findings, specifically as to the vagueness of what constitutes "excessive" bending, kneeling and squatting, he could—and should—have asked for a clarification of her opinion rather than according it limited

---

[2] Spondylosis is defined as "any various degenerative diseases of the spine." *See* Merriam-Webster's Medical Dictionary, available online at www.merriam-webster.com/medical, (last visited December 3, 2015).

weight. *See* Social Security Ruling 96-5p ("SSR 96-5p"), 1996 WL 374183, at *6 (S.S.A. July 2, 1996). However, SSR 96-5p only specifically discusses the ALJ's requirement to "make 'every reasonable effort'" to recontact a *treating* source to clarify the opinion; it does not mention clarifying a *non-treating* source's opinion. *Id.* Thus, this Court cannot determine that the failure to do so constituted error. Ultimately, the Court concludes that the ALJ did not err in according "[l]imited weight" to Dr. Yates's opinion.

With respect to Plaintiff's credibility, this Court "must affirm the ALJ's decision if his findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Social Security*, 597 F.3d 392, 393 (6th Cir. 2010). The ALJ's credibility assessment is "virtually unchangeable" as long as the ALJ cites substantial, legitimate evidence to support his conclusions." *Ulman v. Comm'r of Social Security*, 693 F.3d 709, 713-14 (6th Cir. 2012); *Ritchie v. Comm'r of Social Security*, 540 F. App'x 508, 511 (6th Cir. 2013).

The Commissioner's regulations set forth the process for evaluating a claimant's symptoms, including pain. 20 C.F.R. §§ 404.1529 & 416.929. The ALJ must consider the record as a whole, analyzing factors such as the claimant's daily activities, the intensity of pain, medication, aggravating factors, and functional restrictions. *Id.* One step in the analysis is considering the credibility of the Plaintiff's own statements as to his symptoms. Social Security Ruling 96-7p, 1996 WL 374186, at *1-*9 (S.S.A. July 2, 1996) ("SSR 96-7p"). In doing so, SSR 96-7p provides that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level complaints," but the ALJ must "first consider[] any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or

9

failure to seek medical treatment." *Id*. at *7. One example is if an individual explains that he is "unable to afford treatment and may not have access to free or low-cost medical services." *Id*. at *8.

Plaintiff first disputes that ALJ's finding that Plaintiff was less than fully credible because he had only sought "conservative care." (R. at 37). The ALJ specifically noted that he has only relied upon "narcotics and muscle relaxers" but has not "had any epidural steroid injections for his complaints of pain, nor has he participated in physical therapy." (*Id*.) The ALJ also noted that he "has not sought any type of mental health care treatment other than medications." (*Id*.)

Plaintiff argues that this finding constituted error because the record reflects that he does not have health insurance and that he did seek out low-cost care from the Church Health Center that considers a patient's income in determining its fee but that he had to pay twenty-five to thirty-five dollars per visit, which he could not afford without borrowing money from friends or family. (R. at 59-60). Plaintiff further explained that he went to the Church Health Center to "keep [his] medications up." (*Id*. at 60). Plaintiff states that the Church Health Center has been "very generous" to him and has "still been seeing" him even when he has been unemployed. (*Id*. at 59). Plaintiff states that he has a state-issued "discount card" for prescriptions that initially kept his medication costs at $5 per month but that those costs have risen to $60 per month due to his need for insulin. (*Id*. at 60). Plaintiff states that, without that card, he would not be able to afford his "six pills a day" plus insulin. (*Id*.)

The ALJ did reference Plaintiff's treatment at the Church Health Center for physical complaints but also found that, "[w]hile the claimant complained of an inability to afford mental health treatment, the evidence of record fails to indicate that the claimant ever attempted to avail himself of no cost to low cost medical providers within his surrounding community." (R. at 37 &

Exh. 21F). The ALJ also found that "records note that the claimant smokes cigarettes, which indicates that he does have at least some money to put towards his healthcare needs. Instead he chooses to spend his money on items that may further damage his health." (R. at 37).

Plaintiff further disputes the ALJ's findings as to his ability to use the money he spends to purchase cigarettes to instead obtain health care by arguing that he does not spend twenty-five to thirty-five dollars per month on cigarettes, which is the cost of one co-pay at the Church Health Center. Plaintiff states that he smokes one pack every one to two weeks but has to "get someone to get them" for him. (R. at 62). While the amount Plaintiff spends on cigarettes monthly is not in the record, Plaintiff asks the Court to take judicial notice of sources stating that cigarettes cost $5.19 per pack in Tennessee, making his monthly payment $10.00 to $20.00.[2]

As set forth above, the ALJ is required by the Commissioner's regulations to "first consider[] any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." The ALJ did so in this case, considering his utilization of the income-based Church Health Center for certain physical treatment as well as the lack of evidence in the record that he obtained any no-cost or low-cost mental health treatment. (R. at 37). However, the ALJ did not find this weighed in Plaintiff's favor due to his use of money towards purchasing cigarettes instead of additional health care. (*Id.*) Further, while Plaintiff argues that he would have to borrow money to pay for health care, he does not state that he would be unable to do so; on the contrary, the record reflects that he has borrowed

---

[2] *See* Foundation for Tobacco-Free Kids, "State Excise and Sales Taxes Per Pack of Cigarettes," available electronically at http://www.tobaccofreekids.org/research/factsheets/pdf/0202.pdf (last visited September 30, 2015).

money to pay for health care as well as to purchase cigarettes. (R. at 37, 60). The record additionally reflects that the Church Health Center has continued to treat him even when they were "not supposed to" and that it had donated insulin costs for the most recent month. (R. at 60). Thus, the ALJ's determination that this weighs against Plaintiff's credibility is supported by substantial, legitimate evidence in the record.

Next, Plaintiff contends that the ALJ erred in determining that he was less than fully credible based upon his ability to do certain daily activities. The Commissioner's regulations provide that such activities are one factor the ALJ may consider in evaluating credibility. 20 C.F.R. §§ 404.1429(c)(3)(I) & 416.929(c)(3)(I). With respect to Plaintiff's activities, the ALJ found as follows:

> The claimant's activities of daily living are inconsistent with his allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The evidence of record indicates that despite the claimant's complaints and allegations, he has admitted that he was able to tend to his personal hygiene, make a sandwich, use the microwave, prepare elaborate meals, wash dishes, sweep, help care for his grandchildren, take public transportation independently, attend church, handle his finances, do yard work, play with his grandchildren, wash laundry, and watch television.

(R. at 35). The ALJ further concluded that these activities "generally reveal functioning at a greater level than alleged." (*Id*. (citing Exhs. 1E, 10E)). The ALJ also noted that "[t]hese activities, when viewed in conjunction with the other inconsistencies, further limit the claimant's credibility. Of note, his descriptions of his daily activities are representative of an active lifestyle and are not indicative of a significant restriction of activities or constriction of interests." (R. at 35).

Plaintiff contends that the ALJ's conclusion was erroneous as to his daily activities for two reasons: (1) his daily activities do not require the amount of physical exertion as required by the

12

ALJ's RFC determination of medium work; (2) the ALJ exaggerated Plaintiff's activities "to a certain degree." With respect to the latter, Plaintiff alleges the following exaggerations: (1) that Plaintiff could only sweep and a "little" if at all but could not mop (R. at 65, 504); (2) that Plaintiff can "push the lawn mower for a while" but "has to take a break every few yards" (R. at 504); (3) that Plaintiff no longer plays with his grandchildren but instead just assists "keeping an eye on them" with "minimal" activity such as putting them into a high chair, occasionally changing "a diaper here and there," putting toys out, and turning on the television (R. at 63).

Upon review, the ALJ appropriately considered Plaintiff's activities in evaluating his credibility as required by the Commissioner's regulations. While Plaintiff correctly notes that the ALJ incorrectly stated that the record reflects that he could mop, and while the ALJ could have been more precise as to Plaintiff's activities with his grandchildren and his yard work, his findings as a whole as to Plaintiff's daily activities are supported by substantial, legitimate evidence in the record.

Additionally, while Plaintiff argues that his daily activities do not support the ALJ's RFC classification, the ALJ did not craft the RFC from this factor alone; instead, he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p and 96-7p" as well as "opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (R. at 33). His reliance on Plaintiff's credibility as a portion of that determination, as required by the Commissioner's regulations, is supported by substantial, legitimate evidence in the record. (R. at 33).

Finally, Plaintiff contends that the ALJ "suggested that [Plaintiff] had been less than

13

forthcoming when he stated that he no longer drives a car" in determining that he was not fully credible. (R. at 34-35, 37). Plaintiff asserts that the record reflects that he had only driven twice under urgent situations, during one of which he believes he "dozed off" at the wheel, which he opines may be due to his sleep apnea, and was involved in a car accident. (R. at 68-69).

With respect to Plaintiff's driving, the ALJ found as follows: (1) "[a]lthough he indicated to several doctors that he did not drive anymore, and testified to the same, medical records indicate that the claimant drove himself to the emergency room . . . ."; and, (2) "[w]hile the claimant reported that he had not driven since 2011, records dated September 4, 2013 again indicate that he was in a motor vehicle collision" in which he "was the driver." (R. at 34-35). Thus, the ALJ stated that he "considered that claimant's reports to medical providers that he no longer drives conflict with evidence proving that he does sometimes drive as a factor to discount his subjective allegations of disabling pain and other symptoms." (R. at 37). Upon review, the ALJ correctly set forth Plaintiff's statements that he did not drive as well as other evidence in the record regarding occasions on which he did in fact drive. The ALJ specifically noted that one of those incidents was to drive himself to the emergency room for treatment, which demonstrates that he considered the urgency of that event. However, based upon the record, the ALJ concluded that these inconsistencies were significant enough to reduce Plaintiff's credibility, and this determination is based upon substantial, legitimate evidence. Accordingly, the Court concludes that the ALJ did not err in his determination as to Plaintiff's credibility.

Therefore, upon a finding that the ALJ's decision was supported by substantial evidence and applied the correct legal standards, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED** this 16th day of December, 2015.

              <u>s/ Charmiane G. Claxton</u>
              CHARMIANE G. CLAXTON
              UNITED STATES MAGISTRATE JUDGE